## A. ROTH *v.* CAPTAIN HARKSON AND OWNERS OF THE BRIG N. M. TERRY.

The plaintiff, a drayman, contracted to haul and deliver to a vessel, loading at the port of New Orleans, sixty-four bales of cotton. The cotton was hauled to the vessel and placed on the Levee, at a place near the vessel, which place was pointed out by the mate of the ship. The drayman, at the request of the officers of the vessel, covered the cotton with a tarpaulin; the officers of the vessel then refused to sign a receipt for the cotton, alleging that they would not receipt for freight at so late an hour in the day:

*Held :*—That the cotton was in the custody of the vessel, and the vessel responsible therefor as a common carrier, and must pay for the loss of one of the bales taken away during the night.

The drayman, having paid his employer the value of the bale of cotton lost, brought this action against the vessel to recover the amount so paid :

*Held :*—That there was no privity between the drayman and the vessel; that the mere payment to the owner of the cotton of the the value of the cotton lost, did not subrogate the drayman to the right of action the owners of the missing bale of cotton had against the vessel, either for the bale or its value.

APPEAL from the Sixth District Court of New Orleans, *Duplantier, J.* *A. Saucier,* for appellants.    *W. C. Budd,* for appellee.

LABAUVE, J.   Plaintiff sues the defendants to recover the sum of $600, the value of a lost bale of cotton, alleged to have been delivered to them.

The answer contains, in substance, a general denial.

The District Court gave judgment for $564 16, and the defendants appealed.

The principal question in the case is one of delivery to the vessel.

The plaintiff, who carried on the business of a drayman in New Orleans, on the 13th of August, 1864, was employed by Buddecke & Co, to haul sixty-four bales of cotton to the said brig, and the said vessel was to receive the said cotton as freight.   On that day the whole lot was brought to the brig, except a few bales which were brought on the 15th.   Twenty-two bales of the lot were brought on same day, between 5 and 6 o'clock, P. M., on two wagons; eleven on each wagon.

Peter Kernor, one of the drivers, says :   The brig was lying right before the Port Market, near foot of Marigny street.   When I got there I gave the mate the paper for him to receipt for.   The mate told me to roll the cotton well on the wood-work or he would not receive it.   When he told me that, we hauled up as close up to the ship, on the wood-work of the Levee, where the mate received it.   There were twenty-two bales of the cotton, eleven on each.   We had to roll the bales up, bale to bale, close together, myself and partner and men of the ship; the seamen rolled that cotton up.   Martin Brown drove the other wagon; he is dead.   The mate did not sign the receipt.   There was a tarpaulin put on those bales. He would not receive it unless we covered it up with a tarpaulin,   *   *
It was between 5 and 6 o'clock when we got to the ship.   The receipt

69

called for twenty-two bales. He would not sign it after we had done with our work. He said it was too late to receive the cotton, and he would not receive it.     *           *           *     The mate ordered the men to help us.

Henry Webber testified, that he was a custom-house officer at the time, and that vessels had to be loaded under the supervision of an inspector of the customs, and that he did not allow the cotton to go on shipboard after 6 o'clock, unless by special permit.

Rudolph Hecht corroborates fully the testimony of Peter Kernor, tending to show that the mate, by his conduct, actually received and took in his charge the said twenty-two bales of cotton, one of which was missing on Monday following, the 15th August.

It is true, and proved, that after the cotton had been unloaded, piled up and covered with a tarpaulin, under the instruction of the mate, the captain, clerk, and even the mate, refused to sign the receipt; but the cotton had already been received, and was in charge of the vessel, and the delivery was consummated and could not be recalled; the ship had contracted the obligations imposed on carriers and watermen. C. C. Arts. 2722, 2723.

The same article says :

"They are answerable not only for what they have actually received, in their vessel or vehicle, but also for what has been delivered to them at the port or place of deposit, to be placed in the vessel or carriage". Story on Bailments, §§ 532, 533, 534.

The regulation of the customs did not prevent the ship from receiving the cottton on the wharf.

The plaintiff, having produced to his employer a receipt for sixty-three bales only, was made to pay for the lost bale.

The defendants contend that, if plaintiff did deliver the sixty-four bales of cotton to the brig, his mandate was at an end as soon as the delivery was made, and that he cannot be heard to say that he has paid for the alleged missing bale of cotton, and that he has no right of action against the defendants for its value.

The plaintiff, having parted with his possession as a custodian of the bale of cotton, by delivering the same to the brig, had no longer any control over it, and it became a matter between the brig and the employer of plaintiff; the brig became responsible to the owner of the bale of cotton, and not to plaintiff. It is true that plaintiff paid his employer for the lost bale of cotton; but there is no proof in the record showing an assignment or transfer to plaintiff by his employer for the bale of cotton, or for damages for its loss.

The mere payment by plaintiff did not subrogate him to the right his employer had against the brig, either for the bale or its value; for the plaintiff was not bound with others or for others. C. C. Art. 2157.

We are of opinion that the plaintiff failed to make out his case, and

that our learned brother below erred in giving him a judgment.

It is therefore ordered and decreed, that the judgment appealed from be annulled and avoided.

It is further ordered and decreed, that plaintiff's demand be dismissed, as in case of nonsuit, and that plaintiff and appellee pay costs in both Courts.