# CHARNOCK *v.* TEXAS AND PACIFIC RAILWAY COMPANY.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 194. Argued April 8, 1904.—Decided May 16, 1904.

Negligence has always relation to the circumstances in which one is placed, and what an ordinarily prudent man would do or omit in such circumstances.

The failure to keep a watchman and fire apparatus at a switch track planta-

tion station, maintained for ten years for the convenience of shippers, who thereby were saved the expense of sending their cotton two and a half miles to a regular station and who never demanded the additional protection, no accident or fire occurring during such period, is not negligence on the part of the carrier and in the absence of any evidence whatever as to the origin of the fire, justifies the direction of a verdict for defendant.

*Cau* v. *Texas & Pacific Railway Co., ante,* p. 427, followed as to conditions under which a common carrier may limit its liability against damages to goods by fire.

THE facts are stated in the opinion of the court.

*Mr. William S. Parkerson,* with whom *Mr. Branch K. Miller* was on the brief, for plaintiff in error:

In order to be binding upon the shipper a contract limiting the common law liability of a carrier must be upheld by a valid consideration. Hutchinson on Carriers, § 278; *Wehman* v. *Minneapolis &c. Co.,* 61 Am. & Eng. R. Cases, 273.

In Louisiana, where the consideration is denied, and the evidence leaves its existence or reality in doubt, the burden is on the carrier to prove the consideration. *Mossop* v. *His Creditors,* 41 La. Ann. 297.

The validity or effect of the exemption is determined by the law of Louisiana. *Liverpool &c. Co.* v. *Phœnix &c. Co.,* 129 U. S. 397, 453.

Where proof of one of the facts in issue is peculiarly within the knowledge of one of the parties, the burden of proof is shifted to the party who has special knowledge as to the controverted fact, and he must establish it by evidence. *King* v. *Adkins,* 33 La. Ann. 1057, 1065; *School Board* v. *Trimble,* 33 La. Ann. 1073, 1079.

Where a bill of lading, or contract, limiting the liability of the carrier, contains no statement of the rate paid, the whole limitation is void. *Kellerman* v. *Kan. City &c. R. R. Co.,* 68 Mo. App. 255, 275.

Contracts limiting the common law liability of carriers are not favored by the law, and they are not binding on the

shipper unless fairly made and freely entered into by him. *Adams Express Co.* v. *Nock*, 2 Duval (Ky.), 562, 565; *Hance* v. *Wabash &c. R. Co.*, 56 Mo. App. 476, 482.

In order to be valid, such contract must be the choice of the shipper, and not of the carrier; the shipper must be allowed an option or opportunity to select under which, the common law or limited liability, he will ship his goods; if such free choice or option is not allowed him, the contract is not reasonable, and therefore is void; both rates, that for transportation under the common law liability and that under the limited liability, must be free to the shipper in order that he may have real liberty of choice in making the selection between the two; otherwise, the contract limiting the liability is not fair or reasonable, and therefore is void. *Atchison &c. Co.* v. *Dill*, 56 Am. & Eng. R. Cases, 376; *Dovignac* v. *Mo. Pac. Ry. Co.*, 57 Mo. App. 550; *Lewis* v. *Great Western R. Co.*, 3 Q. B. Div. 195; 47 L. J. Q. B. Div. 131; *Car* v. *Lancashire &c. Co.*, 21 L. J. Exch. 261; 7 Exch. 707; *L. & N. R. Co.* v. *Gilbert*, 42 Am. & Eng. R. Cases, 372.

A carrier is not permitted to so limit its liability as to exempt it from the consequences of its own negligence. *N. Y. Central R. Co.* v. *Lockwood*, 17 Wall. 357; *The Tanbark*, Fed. Cas. No. 13,742.

Where there is a clause limiting the liability of a carrier it bears the burden of proof to show not only that the cause of the loss was within the exemption, but also that it was not due to its negligence or that of its servants. *South &c. Co.* v. *Henlin*, 56 Alabama, 606; *Inman* v. *South Carolina R. Co.*, 129 U. S. 128; *Dillard* v. *L. & N. R. Co.*, 2 Lea (Tenn.), 288; *Steele* v. *Townsend*, 37 Alabama, 247; *Adams Exp. Co.* v. *Stetaners*, 68 Illinois, 184; *Texas &c. Co.* v. *Richmond*, 94 Texas, 571.

In Louisiana, where the contract exempts the carrier from any loss by fire, he carries the burden of proving not only the exemption, but also that the loss was not due to the carrier's negligence, or omission of duty, in any manner causing or

contributing thereto. *Maxwell & Putnam* v. *So. Pac. R. Co.,* 48 La. Ann. 397; *Roberts* v. *Riley,* 15 La. Ann. 103.

This rule has been affirmed by decisions of Federal courts. *New Jersey &c. Co.* v. *Merchants' Bank,* 6 How. 383; *Seiller* v. *Pac. Co.,* Fed. Cas. No. 12,644; *Ormsby* v. *Union Pac. Co.,* 4 Fed. Rep. 706.

The exemption from loss or damage by fire is not effective unless the fire be the proximate cause of the loss or damage. *Condict* v. *Grand Trunk R. Co.,* 54 N. Y. 500.

Proximate cause of the loss here was not the fire, but defendant's negligence, which preceded it and without which the fire would not have occurred.

The delivery of goods for shipment at a place where the carrier has consented to receive them for transportation is a complete delivery to the carrier, and when this is done its liability for the goods is that of a common carrier. *St. Louis &c. Co.* v. *Murphy,* 60 Arkansas, 337; *Dixon* v. *Georgia, &c. Co.,* 110 Georgia, 173; *I. C. R. Co.* v. *Smiser,* 38 Illinois, 354; *Greenwood* v. *Cooper,* 10 La. Ann. 796; *Barret* v. *Salter,* 10 Rob. (La.) 424; *Fitchburg &c. Co.* v. *Hanna,* 6 Gray (Mass.), 539.

A special contract exempting the carrier from liability in specified instances is not to be used by it against any claim of liability as to which it was designed to furnish protection. *So. Pac. R. Co.* v. *Arnette,* 111 Fed. Rep. 849.

Where goods are delivered for shipment at a place designated by the carrier, and before being ladened, and when in such place, they are stolen or destroyed, the carrier is guilty of negligence, if it makes no provisions against such theft or destruction, and is liable to the shipper for the value of the goods. Hutchinson on Carriers, § 89; *Fisher* v. *Brig Norvall,* 8 N. S. (Martin's La. Rep.) 120; *Roth* v. *Harkson,* 18 La. Ann. 705.

If the carrier negligently leaves goods in a place of danger, he cannot by stipulation exempt himself from liability for loss by fire. *McFadden* v. *Railway Co.,* 92 Missouri, 343.

*Mr. Charles P. Cocke*, with whom *Mr. William Wirt Howe*, *Mr. W. B. Spencer* and *Mr. John F. Dillon* were on the brief, for defendant in error.

MR. JUSTICE McKENNA delivered the opinion of the court.

The case was removed from the Civil District Court in and for the Parish of Orleans to the United States Circuit Court for the Eastern District of Louisiana by defendant, on the ground that it was a corporation organized by an act of Congress of the United States.

The petition alleges that plaintiff delivered to defendant, at a point on the line of its railway called Meekers' Switch, to be transported to New Orleans, fifty-two bales of cotton at a rate of freight then and there agreed upon and a bill of lading issued to plaintiff. The cotton was loaded upon the cars of defendant, and while waiting transportation was destroyed by fire.

The petition charges negligence on the part of defendant in that it failed to take measures of precaution for the safety and protection of the cotton, but left it in the cars on a side track, "in an open country, unguarded and unwatched." The bill of lading contained a provision exempting defendant from liability for damage to or destruction of the cotton by fire, but the petition alleges that the provision was null and void, as far as plaintiff is concerned, for the following reasons, among others: He received no consideration therefor; the rate which he agreed to pay was the only rate defendant would give or was offered; on account of the negligence of the defendant.

The value of the cotton was $2,440.32.

The evidence in the case is that Meekers was a mere switch track running to the Meekers plantation. No agent was maintained at the station. Shippers wanting cars applied for them at the next station. The practice was for shippers to load the cars furnished and gets bills of lading from the agent who furnished the cars. The next train passing after the cars were

loaded took them; that no guard or watchman was placed over freight was well known.

The loading of the cotton in the present case was completed at 2 P. M. The bill of lading was obtained at 5 P. M. The fire was discovered at 10 P. M. The train which was to take the cars was not due until 9 A. M. next morning. There was no evidence of the cause of the fire.

Defendant moved the court to instruct the jury to return a verdict for it. Plaintiff requested the court to submit to the jury the question whether or not the destruction of the cotton was due to or caused by the negligence of the defendant. The request was denied, and the motion of the defendant was granted, and a verdict was returned for defendant. From the judgment entered on the verdict error was prosecuted to the Circuit Court of Appeals for the Fifth Circuit and the judgment was affirmed. 113 Fed. Rep. 91.

This case was argued and submitted with *Cau* v. *Texas & Pacific Railway Co.*, and all of its questions are ruled by that case except one, and that is the effect of leaving the cotton unguarded on the responsibility of the defendant.

In answering the question two elements are to be considered —the negligence of the defendant and its connection with the destruction of the cotton. If the evidence established neither, the Circuit Court rightfully directed a verdict for defendant.

Negligence has always relation to the circumstances in which one is placed, and what an ordinarily prudent man would do or omit in such circumstances. Applying that test in the case at bar, we do not think negligence on the part of defendant was established.

Meekers was not a regular station; indeed was not a station at all but a mere switch track. The defendant was not obliged to receive freight there. It was, as said by the Court of Appeals, "a country or plantation switch," established and maintained for the accommodation of the planters of the neighborhood. There was no agent or employé maintained there for the purpose of receiving or guarding freight, nor was there fire

apparatus kept. Cars were only sent there when ordered, loaded by the shipper, and taken by the first passing freight train to the point of destination. This was the practice for years, and there is not a word of testimony that it was not adequate to the protection of the planters as it was to their accommodation, or that it was in their judgment not a complete fulfillment of the duty of defendant. No circumstance is shown which demanded a change in the practice. There was no demand made by the plaintiff for a change. Whatever risk there was seems to have been accepted as a consideration for the convenience afforded. It is easy to understand that if watchmen had been demanded of the defendant, it would have insisted upon the delivery of freight at its regular station at Le Compte, two and one-half miles distant. But the risk seems not to have been great. No loss from any cause is shown to have occurred during the existence of the practice —nothing shown from which danger could be apprehended. One of the plaintiff's witnesses testified that tramps passed up and down the road daily, but what can be inferred from that? It is inappreciable. Was danger to be apprehended from their carelessness or malice? During the ten or eleven years of the existence of the station not an instance of either is shown.

It is, however, urged that a place of delivery other than a regular station can be agreed on or established by custom or practice, and at the instant of delivery the full responsibility of a carrier attaches. To bring the case at bar within those principles *Fischer* v. *Norvall* 8 N. S. (10 Martin) 120; *Barret* v. *Salter*, 10 Rob. Rep. (La.) 434, and *Roth* v. *Harkson*, 18 La. Ann. 705, are cited. The principles may be assented to; the cases cited are distinguishable from that at bar.

In *Fischer* v. *Brig Norvall* thirty-five bales of cotton were sent to be shipped on the brig Norvall; and were received by the captain. The cotton was left upon the levee unguarded, and during the night following delivery it was destroyed by fire. The origin of the fire was not shown, but it was shown

that it was not customary in the city (New Orleans) to put a guard over cotton so placed. The code of the State made carriers liable for loss or damage to property entrusted to their care, unless they proved that such loss or damage had been occasioned by accidental and uncontrollable events. The defendants in the case were adjudged liable. The Supreme Court held, approving the decision of the trial court, "there was negligence in the defendants permitting the cotton to be exposed all night on the levee, to theft, fire and other accidents, without some person to take care of it." It was not the care, the court further observed, that a prudent person would take of his own property, and the custom proved was not a good excuse. The facts in that case are markedly different from those in the pending case. Cotton exposed upon the levees of New Orleans is in a different situation from cotton enclosed in locked box cars on a side track in the solitude of the country, and demands a different degree of care.

In *Barret* v. *Salter* forty hogsheads of tobacco were delivered for shipment on the ship Huron. It was receipted for by the mate. After it was received a heavy rain came, which lasted about two hours, to which it was suffered to remain exposed. It was testified that the captain was told that if the tobacco should be put on board without being opened and trimmed it would be found damaged on its arrival at destination. It was so found. The defendants were held liable.

In *Roth* v. *Harkson* the question was whether cotton put in a place designated by a mate of a ship and covered by a tarpaulin by the direction of the officers of the ship was delivered to the ship, notwithstanding the officers afterwards refused to receipt for it on the ground of the lateness of the hour. It was held to be a delivery.

The question in the case at bar, however, is, not whether there was delivery to defendant nor when its responsibility attached, but assuming delivery at Meekers and that defendant's responsibility attached at the time the bills of lading were issued, was defendant guilty of negligence? That ques-

tion we have answered in the negative, nor could the answer be otherwise, even if it be conceded, as contended by plaintiff, that under the law of Louisiana the burden of proof was upon the defendant to show the absence of negligence. The allegation of the petition was: "That the fire, by which the destruction of said cotton was caused, was due to the negligence of the said company itself, and of its agents, employés and servants; that the said cotton was by it left in two cars of the said company, standing upon its track, in the open country, unguarded and unwatched by the said company, in any particular whatsoever; that it was the duty of the said company to take some measures of precaution to protect said cars, and the cotton contained therein, from depredation, loss or injury, by third persons, wrongdoers or those bent upon mischief; that it totally failed and neglected to take any measures of precaution, for the safety and protection of the said cotton, but left it in said cars, said track, unguarded and unwatched in the night time during which it was destroyed by fire; that petitioner believes that the said cotton was set on fire by some malicious person; that petitioner has no actual knowledge as to the origin or cause of said fire." The evidence we have commented on, and, we may only add, it established all that was charged as negligence, and there was nothing for the defendant to explain. The defendant could, as it did, submit the question of its liability upon the evidence adduced.

*Judgment affirmed.*