## UNITED STATES v. M. LEVY'S SONS et al.

## THE LAKE FONTANET.

(Circuit Court of Appeals, Fifth Circuit. April 3, 1923.)

No. 4004.

1. **Shipping ⊚⟹141(1)—Carrier liable for damage to cargo from excepted cause, if it would have been prevented by exercise of proper care and skill.**

Though damage to cargo results from a cause excepted in the bills of lading, the carrier is liable if it would have been prevented by the exercise of proper care and skill.

2. **Shipping ⊚⟹123—Carrier is required to protect cargo from ordinary contingencies of voyage.**

A vessel and owner are liable for damages resulting from negligent failure to so stow cargo as to protect it from injury by the ordinary contingencies of the voyage.

3. **Shipping ⊚⟹123—Custom of stowage will not relieve carrier from liability, if under the circumstances such stowage was negligent.**

That a cargo was stowed and dunnaged in a customary manner will not relieve the carrier from liability for damage, if under the circumstances the manner of stowing and dunnaging adopted was faulty and negligent.

4. **Shipping ⊚⟹123—Ship held liable for damage to cargo.**

Where a steel ship sailed from Brazilian ports in December with a cargo of coffee, arriving in New Orleans in January, where, as was to be anticipated, the colder water of the Mississippi caused the sides and frame of the vessel to sweat, it was negligence to fail to so stow and dunnage the cargo as to protect it from injury from such sweating, which could have been prevented by proper care.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Suit in admiralty by M. Levy's Sons and others against the steamship Lake Fontanet; the United States, claimant. Decree for libelants, and the United States appeals. Affirmed.

Edouard F. Henriques, Sp. Asst. in Admiralty to U. S. Atty., Geo. H. Terriberry, Frazer L. Rice, W. W. Young, Jos. M. Rault, and Walter Carroll, all of New Orleans, La., for the United States.

Philip S. Gidiere, of New Orleans, La. (Walker B. Spencer, Philip S. Gidiere, Esmond Phelps, and Charles E. Dunbar, Jr., all of New Orleans, La., on the brief), for appellees.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. This was a libel filed by the appellees against the steamship Lake Fontanet to recover for damages to coffee shipped by that vessel from the Brazilian ports of Rio Janeiro and Victoria to New Orleans. The libel charged that the coffee was damaged by sweat and water, by reason of it not having been stowed with proper dunnage, and by reason of the master, his officers, and crew not taking proper precautions in the custody and care of the coffee. When the vessel was loaded and sailed from the Brazilian ports in December, 1919, the weather was warm and damp. During the period between the date of the arrival of the vessel in the port of New Or-

leans, January 18, and February 2, 1920, the date when it began to discharge cargo, the weather was cold and foggy. A result of the ship passing from the warm waters of the Gulf of Mexico into the much colder waters of the Mississippi river was that water formed inside the ship below its water line on its metal sides and beams. The entire cargo was coffee, which was in sacks. The ship's holds were arranged for loading coffee in them by bolting on to its upright steel ribs, which were 24 inches apart, wooden battens, which are planks 6 inches wide and 2 inches thick, with spaces of 9 inches between them. As the sacks of coffee were loaded into the vessel, mats made of long dried reeds were laid between the wooden battens and the sacks, the ends of such mats overlapping as one was laid next above another against the battens. The pressure of the coffee sacks against the mats caused the mats, particularly their ends, to come in contact with the steel side of the ship, which was 8 inches from the inside surface of the battens, with the result that moisture was conveyed from the ship's steel skin or side to the coffee sacks next to the battens. Such mats were also used to cover the coffee stowed in the holds. That covering did not keep the moisture dripping from the steel beams above from reaching the top layer of coffee sacks. The coffee which was damaged was that which was in sacks next to the battens and that which was in the top layer of sacks.

The liability for the damage caused as above indicated is resisted on the grounds that under a provision of the bills of lading the carrier is not liable for loss or damage occasioned by sweat, and that the ship was battened, dunnaged, and matted in the manner usual and customary in the Brazilian coffee trade. The following is the provision of the bills of lading which is relied on:

"It is mutually agreed * * * that the carrier shall not be liable for loss or damage occasioned * * * by heating, decay, putrefaction, rust, sweat, change of character, drainage, leakage, breakage, or any loss or damage arising from the nature of the goods or the insufficiency of the packages, * * * nor for any loss or damage caused by the prolongation of the voyage."

Counsel for the appellees contend that the word "sweat" in the just-quoted provision means only moisture exuding from goods shipped, and not moisture arising in the way above indicated. There is some basis for this contention, as the language chosen by the carrier is to be construed most strongly against it, and the other words in immediate connection with which the one in question was used are descriptive of loss or damage arising from the nature of the goods shipped. But, in view of the conclusion stated below, it may be assumed, without being decided, that the sweating which caused damage to the coffee was within the meaning of the quoted provision of the bill of lading.

[1, 2] Though the damage resulted to the coffee from an excepted cause, yet if it would have been avoided by the exercise of proper skill and diligence the carrier was liable. Cau v. Texas & Pacific Ry. Co., 194 U. S. 427, 24 Sup. Ct. 663, 48 L. Ed. 1053; Clark v. Barnwell, 12 How. 272, 13 L. Ed. 985; The Glenlochy (D. C.) 226 Fed. 971. Evidence adduced called for the conclusion that, if the stowing and dunnaging of the cargo had been done in a different and entirely prac-

288 F.—35

ticable manner, the damage complained of would have been avoided. As the cargo was loaded in a summer month in Brazil, and was due to arrive at its destination in midwinter, it was to be expected that the steel vessel would sweat excessively upon its coming from the warm waters of the Gulf of Mexico into the cold waters of the Mississippi river. What happened was the result of an ordinary contingency of such a voyage undertaken at the time the one in question was made. The vessel and its owner are liable for damages resulting from a negligent failure so to stow cargo as to protect it from injury by the ordinary contingencies of the voyage. 24 Ruling Case Law, 1303.

[3, 4] There was testimony to the effect that the cargo was stowed and dunnaged in the manner which is customary on vessels engaged in the Brazilian coffee trade. If under the circumstances the manner of stowing and dunnaging adopted was faulty and negligent, the existence of a custom so to do was not a good excuse. What ought to be done is fixed by a standard of reasonable prudence, whether it is usually complied with or not. Texas & Pacific Ry. Co. v. Behymer, 189 U. S. 468, 23 Sup. Ct. 622, 47 L. Ed. 905; Charnock v. Texas & Pacific Ry. Co., 194 U. S. 432, 24 Sup. Ct. 671, 48 L. Ed. 1057. A ship cannot lawfully contract against liability for loss or damage arising from negligence, fault, or failure in proper loading, stowage or care of its cargo. U. S. Comp. St. § 8029. It was negligence to subject the coffee to damage which under the circumstances was to be anticipated, and which was avoidable by the exercise of proper care. We are of opinion that the evidence adduced called for the conclusion that the coffee was damaged as a result of a negligent failure to properly stow and protect it. The court did not err in holding the ship liable for that damage.

The decree to that effect is affirmed.