## THE EASTERN PRINCE.

District Court, N. D. California, S. D. May 12, 1927.

No. 17740.

1. **Shipping** ⊚⟶141(2)—**Provision exempting carrier from loss due to nature of goods or inherent vice did not relieve carrier from liability for overloading oil tanks.**

Provision in bill of lading, exempting carrier from losses due to nature of goods carried or inherent vice, *held* insufficient to relieve carrier from liability for loss of linseed oil in bulk, where evidence shows that oil tanks were overloaded, in view of known tendency of linseed oil to expand.

2. **Shipping** ⊚⟶125—**Carrier held liable as insurer for shortage in oil because of deviation not covered by deviation clause.**

Carrier *held* liable as insurer for shortage in linseed oil carried by ship because of devia-

tion by proceeding to another port to discharge cargo after loading oil, and then returning to load coal before finally clearing, in violation of deviation clause authorizing proceeding to any other port, either before or after proceeding towards port of discharge.

In Admiralty. Libel by W. P. Fuller & Co. against the British steamship Eastern Prince, etc.; claimed by the Prince Line, Limited, and another. Decree for libelant.

McCutchen, Olney, Mannon & Greene, of San Francisco, Cal., for libelant.

Knight, Boland & Christin, of San Francisco, Cal., for respondents.

KERRIGAN, District Judge. This libel is brought by the consignee of a shipment of linseed oil to recover the value of an alleged shortage in a shipment by the Eastern Prince from Hull, England, to San Francisco, Cal. The libel as amended claimed delivery to the ship of 2,806,663 pounds of oil and discharge at San Francisco of 2,733,942 pounds, a shortage of 72,721 pounds. At the trial libelant was unable to prove loading of two lighter loads of oil, and abandoned its claim, except as to 15,814 pounds of oil. It was stipulated at the trial that respondents, Prince Line, Limited, and Furness-Withy & Co., Limited, should be made to respond for the carrier's liability; also that the Eastern Prince was a common carrier. It was further stipulated that the market value of linseed oil in bulk at San Francisco at the time of the discharge of the cargo in question was 83½ cents per gallon of 7½ pounds.

The evidence is sufficient to show that there was a shortage in the amount of 11,334 pounds, plus an amount lost while the vessel was loading, due to a break in the pipe line, which, from the evidence, I find to have been not more than 2,240 pounds, a total shortage of 13,574 pounds.

Respondents seek to relieve themselves of liability by setting up provisions of the bill of lading to the effect that:

"6. *Losses Due to Nature of Goods.*—The carriers shall not be liable for losses due to chafing, bursting, *leakage,* spillage, breakage, splitting, wastage, or other *losses due to the nature of goods carried or inherent vice.*"

[1] It is urged that any loss which occurred was due to the expansion of the linseed oil ("inherent vice"), with resultant leakage, from liability for which the provision in the bill of lading above quoted purports to exempt the carrier. This provision is, however, not sufficient to relieve respondents from liability, since the evidence shows that the oil tanks were overloaded at Hull, in view of the known tendency of linseed oil to expand. U. S. v. M. Levy's Sons (C. C. A.) 288 F. 544.

[2] Moreover, irrespective of the evidence as to the stowage of the cargo, respondents are liable as insurers for the shortage in the oil carried by the Eastern Prince on account of a deviation not covered by the deviation clause in the bill of lading. This clause is as follows:

"3. *Routes—Deviation.*—(c) Either before or after proceeding towards the port of discharge to proceed to and/or stay at any ports or place whatsoever, although in a contrary direction to, or out of or beyond the customary route to the said port of discharge, once or oftener, in any order, backwards or forwards, for any purpose whatsoever."

The evidence shows that, when this oil was loaded at Hull, the Eastern Prince had not yet completed her preceding voyage. She proceeded to Leith to discharge cargo brought from the United States, and then returned to Swansea to load coal, before finally clearing for San Francisco. Despite the broad phrasing of the deviation clause, this overlapping of voyages brings the Eastern Prince within the rule of the West Aleta. Rosenberg Bros. & Co. v. U. S. Shipping Board Emergency Fleet Corp. (D. C.) 7 F.(2d) 895; (C. C. A.) 12 F.(2d) 721, establishing a deviation.

Libelant is entitled to a decree for $1,-493.14, with interest at 7 per cent. from the date of filing the libel, and costs of suit.

So ordered.