## ELLIS v. LOUISVILLE & N. R. CO.

Court of Appeals of Kentucky.

June 20, 1952.

Rehearing Denied Oct. 31, 1952.

Allen P. Dodd, Dodd & Dodd, Louisville, for appellant.

Robert P. Hobson, Woodward, Hobson & Fulton, Louisville, for appellee.

SIMS, Justice.

The parties to this appeal will be referred to as plaintiff and defendant. Eldred F. Ellis, an employee of the Louisville & Nashville Railroad Company for 25 years in its Louisville yards and roundhouse, sued the company for $99,800 damages due to silicosis which the petition avers he contracted by reason of the company's negligence in failing to furnish him with safe tools and equipment and a safe place in which to work. The action was brought under a statute of the United States, 45 U.S.C.A. § 51 et seq., commonly known as the Federal Employers' Liability Act, and hereinafter referred to as the Act.

The answer was a general denial followed by a plea of contributory negligence. A general demurrer was sustained to the plea of contributory negligence since the Act as construed in reference to a violation of the Safety Appliance Act 45 U.S.C.A. § 1 et seq., excludes contributory negligence as a defense. Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282, 11 A.L.R.2d 252, page 271.

At the conclusion of all the evidence the trial judge, Hon. Lawrence S. Grauman, in a full and lucid opinion from the bench directed a verdict for defendant. Plaintiff based his case solely on defendant's failure to furnish him a mask which would have prevented him from breathing dust while on "sanding" jobs. The company insists there was no proof to show it knew, or by the exercise of ordinary care could have known, there was any danger to plaintiff in the work he was performing and there was no need to furnish him with a mask.

The record shows plaintiff went to work for the company in March 1924 and worked continuously in the Louisville yards and roundhouse until he became disabled in October 1949. He started work as a pipe fitter's helper and worked at that job until 1925, then he became a "herder" and worked as such until 1938, when he was changed back to a pipe fitter's helper, which job he

held until his health forced him to stop work in 1949.

Plaintiff's proof is to the effect that in performing the duties as a pipe fitter's helper it was necessary for him to inspect and repair the sanding apparatus on locomotives, which releases sand on a wet or slippery track to keep the wheels of the engine from spinning and to give them traction. The sand box on the locomotives is on top of the boiler and contains from 100 to 150 gallons of dry sand. On each side of the sand box are pipes leading to the sand trap through which the sand flows by gravity to the trap and is then forced by compressed air through other pipes to a point in front of the wheels slightly above the tracks. Plaintiff would lean over the nozzle and have some one turn on the compressed air to see if the sand fell through on the rail. A cloud of dust would arise and naturally he would breath some of it.

Also, as a pipe fitter's helper plaintiff would repair pipes in the sand house. His work in the sand house was irregular. Sometimes he would work in the sand house two or three times a week and sometimes once a month. These jobs in the sand house would take from thirty minutes to all day. It was very dusty in the sand house and there was no blower in the old sand house and men regularly employed there were furnished masks or respirators to protect them from breathing silica. A new sand house was built in 1938 which has a blower that removes some but not all of the dust.

Plaintiff further testified that as a "herder" his duty was to fill the sand box on locomotives as they came into the yards. This was done by allowing sand to run by gravity through a four inch hose from the top of the sand tower to a position above the sand box on the engine. This would cause a considerable cloud of dust which plaintiff breathed. He worked on from three to eighteen engines a day.

The roundhouse was open, had no roof and all of plaintiff's work was done outside except his occasional trips to the sand house. Plaintiff was not continuously exposed to dust, but encountered it only occasionally and the duration of his contact with the dust was usually but a few minutes out of an entire day's work. There was contrariety in the proof as to whether plaintiff was suffering from silicosis or tuberculosis. But for the purpose of testing the correctness of the trial judge's ruling in directing a verdict for the company, we must assume plaintiff had silicosis since there was evidence he did.

The Act does not define negligence, but that question is to be determined "by the common law principles as established and applied in the federal courts". Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 1027, 93 L.Ed. 1282, 11 A.L.R.2d 252. As pointed out in the Urie opinion, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, has no application. The opinions of the Supreme Court have stated that the congressional intent was that questions arising in actions under the Act should be left to the jury "to the maximum extent proper" and the jury has the right to make "all reasonably possible inferences" from the evidence as it chooses to accept; and "Only when there is a complete absence of probative facts to support the conclusion reached does reversible error appear". Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, page 68, 63 S.Ct. 444, page 451, 87 L.Ed. 610, 143 A.L.R. 967; Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, pages 32–35, 64 S.Ct. 409, pages 411–412, 88 L.Ed. 520; Lavender v. Kurn, 327 U.S. 645, page 653, 66 S.Ct. 740, page 744, 90 L.Ed. 916.

Plaintiff puts great reliance in Sadowski v. Long Island R. Co., 292 N.Y. 448, 55 N.E. 2d 497, 501. It was there written:

"Evidence that some railroads furnished no such contrivances as plaintiff claimed were necessary for the use of men working under similar conditions or furnished similar places to work for men doing work similar to that required of plaintiff does not establish, as matter of law, that no such contrivances or no different place in which to work or no different appliances to carry on the work were required in the case at the bar in the exercise of ordinary care. The ultimate question of fact was not what particular protective means some-

one else used in similar work. It was whether or not, under the particular conditions described in this case, the defendant furnished plaintiff a reasonably safe place in which to work and such protection in connection with his work against the inhalation of silica dust as would be expected of a person in the exercise of ordinary care under those conditions. Nor does the fact that no other person in defendant's works, so far as defendant knows, incurred similar injuries to those plaintiff received relieve defendant, as matter of law, from liability or indicate that defendant did everything for the protection of plaintiff that ordinary care and prudence dictated".

The Sadowski opinion states the correct rule, but the facts in the instant case do not bring it within that rule.

Defendant proved by L. K. Rose, its general foreman in the Louisville yards, that from 90% to 95% of plaintiff's work was done outdoors. Dr. D. N. Pickar, a lung specialist, in testifying for defendant stated that confinement is pertinent in the development of silicosis unless there was prolonged or severe exposure to silica. It was shown defendant used only Ohio River sand and it never has caused silicosis when handled in the open. Leroy Wines, an employee of defendant, who worked with plaintiff "off and on since 1925", and who checked and tested sand pipes and the sanding device "on each engine that came in", never saw a pipeman or "herder" have a mask or respirator. Rufus May, Inspector of Safety for defendant, who has studied the "system of operation engaged by railroads generally throughout the United States", testified it was the general practice of railroads throughout this country not to furnish gas masks or respirators of any kind to pipe fitters, pipe fitter's helpers or to "herders" doing work on sanders, sand pipes, sand traps and being occasionally in sand houses such as maintained by defendant.

■ The general rule as to common experience, usage and custom is well-stated in 38 Am.Jur. "Negligence" § 34, pages 679–682, from which we take these excerpts:

"The common practices of the people, however, cannot be ignored in determining whether due care was exercised by an individual in a particular situation. It is not to be expected that the law will exact a degree of care in guarding any article which will make the great majority of the possessors of that article chargeable with habitual or continuous negligence. * * * Persons who are charged with a duty in relation to a particular matter or thing have a right to rely upon the sufficiency of a structure or contrivance which is in common use for the purpose and has been in fact safely used under such a variety of conditions as to demonstrate its fitness for the purpose. * * * Ordinarily, one is not considered negligent in respect of acts which conform to a common practice that has existed for years without resulting in an injury, and that has nothing about it which shows a want of due care. * * * In other words, the test of negligence with respect to instrumentalities, methods, etc., is the ordinary usage and custom of mankind."

The above quoted text is supported by our cases of Barnes v. F. C. Gorrell & Sons, 296 Ky. 583, 177 S.W.2d 395; Curtis v. Traders Nat. Bank, Ky., 237 S.W.2d 76, and the case from the United States Supreme Court of Charnock v. Texas & Pacific R. Co., 194 U.S. 432, 24 S.Ct. 671, 48 L.Ed. 1057.

■ Applying this sound rule and the rule stated in the Sadowski opinion to the facts in this case, it is manifest defendant was not guilty of negligence in failing to furnish plaintiff safe equipment or a safe place in which to work, since the record plainly shows the practice by railroads generally throughout the nation was not to furnish masks or respirators to men doing the same character of work plaintiff had performed for defendant.

The judgment is affirmed.