Robert F. RUBLEY

v.

LOUISVILLE & NASHVILLE RAIL-
ROAD COMPANY.

Civ. A. No. 4315.

United States District Court
E. D. Tennessee, N. D.
Sept. 5, 1962.

Arnett, Gilbertson & Draper, Knoxville, Tenn., for plaintiff.

Poore, Cox, Baker & McAuley, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, Chief Judge.

Robert F. Rubley sued Louisville & Nashville Railroad Company to recover damages for "industrial deafness". His action was based upon alleged violations of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. The case was tried to a jury and resulted in a verdict in favor of plaintiff for $8,500.00.

Defendant has moved for a judgment notwithstanding the verdict of the jury, or in the alternative for a new trial. The basis of the motion is that there is no material evidence to support a verdict, and that the Court erred in refusing to direct a verdict in favor of the defendant pursuant to a motion made at the conclusion of plaintiff's proof and renewed at the conclusion of all the proof.

The sole question for determination is whether the record contains any evidence of negligence upon the part of the defendant that caused plaintiff's disability.

Plaintiff began work for the defendant as a switchman in 1944. He continued as a switchman until the night of July 22, 1960 when he was retired from service due to defective hearing. At that time, he was 56 years of age. He suffered with a bad cold in October, 1956 and that was the beginning of the ear trouble. He attributed his defective hearing to the cold. In 1957 and the first part of 1958, there was little change in his hearing, but in November, 1958, the trouble became progressively worse. In 1959, the trouble became worse and in March, 1960 it became very bad.

At that time, a hearing aid was obtained. During this period he was off from work, but returned on May 11, 1960 wearing his hearing aid. A hearing test was given by the company with and without the hearing aid and following these tests he was directed to return to Dr. Knight for further examination. Doctor Knight made an audiometer test which disclosed his hearing to be defective. He was asked if he worked around heavy noises, and replied in the affirmative. The steam engine was used when he first began work, but it was replaced by the diesel in 1952. He did not claim that the noise from the steam engine affected his hearing. Doctor Knight concluded that the heavy noises were a factor in his trouble, which he described as a nerve type loss.

Mr. Lawson, another switchman, was the only man who worked for the Company that plaintiff thought had hearing difficulty. Mr. Lawson did not testify and there is no evidence in the record that the alleged difficulty was caused by his exposure to prolonged noise caused by diesel engines.

Plaintiff worked in the West Knoxville Yards and City Yards. He was what was known as an engine man. His chief duties were to signal the engineer to move the train. He did not work near the engine all the time. The record shows that he worked 277 days as an engine man and 63 days as a field man in 1959 and 1960. One who works as a field man is usually several cars away from the engine.

There were about 75 employees of the defendant who worked under conditions similar to those under which plaintiff worked, about 50 of whom were switchmen.

As previously indicated, Dr. Knight first examined plaintiff on July 2, 1960 and it was his opinion that a big factor in plaintiff's type of hearing loss was exposure to loud noises over a prolonged period. Any noises that have an intensity between 80 and 100 decibels over any period of time should require consideration to determine whether an employee is being injured. The sound level was between 80 and 100 decibels in the yards where plaintiff worked when the cars were in motion or particularly when being coupled or when the engine was starting and stopping. The average intensity was not over 100 decibels, but this was of sufficient intensity to cause the type of injury which plaintiff sustained.

Ear plugs "are fairly good where ear plugs can be worn with safety in industry", in the opinion of Dr. Knight. He thought ear plugs could be used by a switchman on the railroad, but he never put ear plugs on a switchman.

Doctor Knight had the following to say on the subject of ear plugs:

"Q. I see. From your standpoint as a physician if a man wears ear plugs, less sound goes in his ears?

"A. Yes.

"Q. Actually, that is all you are saying on that subject?

"A. Yes." Tr. p. 105

Plaintiff was aware of his hearing trouble from 1956 to the date of his retirement, but never advised defendant of it until he was examined by defendant's doctor in 1960.

Doctor McConnell, an audiologist, stated that there was a relation between prolonged exposure to noise and loss of hearing. A person within fifteen feet of a diesel engine while it is in operation would be subjected to noise intensity from 90 to 110 decibels, depending upon the speed and power of the engine. Levels above 85 decibels will cause hearing loss in a large number of individuals if they are exposed over a long period of time.

Doctor McConnell advocated the inauguration of a hearing conservation program in the railroad industry. He stated that if the noise near which the employees work is of sufficient intensity to affect their hearing, then they should be required to wear ear plugs. He was of the opinion that defendant had a noise problem.

There are very few sound specialists. There are only two audiologists in Knoxville. No industry in Knoxville has employed a sound specialist.

Doctor McConnell was of the opinion that the noise created by defendant's diesels could have produced plaintiff's hearing trouble.

Defendant has never had a claim similar to the one made by plaintiff. Its train master in the Knoxville area tested over 2,000 railroad employees over a period of twenty years and plaintiff was the only one who failed to pass the hearing test during this period.

Mr. Hadley, who is defendant's Assistant Superintendent in the Knoxville area and an ex-switchman, stated that good hearing was required for a railroad worker. He never heard any switchman claim that his hearing had been impaired by noise made by diesels. It was his opinion that the wearing of ear plugs by switchmen would increase injury rate and fatality rate. Hearing protection devices have not been used on the rail-

road. Defendant has some 16,000 to 17,000 employees. The claim of the defendant is the first claim made against defendant or any other railroad within defendant's knowledge for defective hearing allegedly caused by prolonged exposure to noise.

Plaintiff does not claim that any of the diesel engines around which he worked were defective. Nor does he claim any negligence upon the part of the operators of the engines. It is his claim that the place where he worked was an unsafe place to work and that the defendant was negligent in failing to inaugurate a conservation sound program as explained by Dr. McConnell in his testimony and in failing to ascertain that his hearing was being affected by prolonged noise from the engines and in failing to furnish him with ear plugs.

Counsel for the parties have been unable to find any case involving a factual situation similar to the one presented in this case.

■ ■ The Federal Employers' Liability Act imposes upon the employer the duty to use reasonable care to furnish its employees a safe place to work. Bailey v. Central Vermont Ry., Inc., (1943) 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444. The liability of an employer is grounded on negligence and is not absolute. Brady v. Southern Ry. Co., (1943) 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239.

■ The Act does not define negligence, but that question is to be determined by common law principles as applied in the federal courts. Urie v. Thompson, (1949) 337 U.S. 163, 174, 69 S.Ct. 1018, 93 L.Ed. 1282.

■ Negligence is lack of due care under the circumstances, or the failure to do what a reasonable and prudent man would have done under the circumstances, or doing what such a person under the circumstances would not have done. Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610.

■ If there is any evidence to justify a reasonable belief that the railroad failed to exercise reasonable care, the case must go to the jury.

■ The determinative question in the case is whether defendant was negligent in failing to conduct sound tests to determine whether the noise of its diesel engines was injurious to its employees who worked near them, including plaintiff, and if injurious to plaintiff, whether defendant was negligent in failing to furnish him ear plugs. The fact that other railroads do not furnish ear plugs to employees or that no claim has been made against a railroad for hearing loss to an employee allegedly caused by prolonged noise, does not relieve defendant from liability as a matter of law. Charnock v. Texas & Pacific R. Co., 194 U.S. 432, 24 S.Ct. 671, 48 L.Ed. 1057; Sadowski v. Long Island R. Co., 292 N.Y. 448, 55 N.E.2d 497 (1944).

■ The test of a jury case under the Act as stated by the Supreme Court is whether the evidence justifies with reason the conclusion that the employer's negligence played any part in producing the injury. Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493.

■ ■ A railroad is guilty of negligence if the measures adopted by it to protect its employees is inadequate, and below the standard of care required. Snyder v. Lehigh Valley R. Co., 3 Cir., 245 F.2d 112 (1957). A railroad has a continuing and non-delegable duty to use due care in providing a safe working place for its employees, and actual knowledge of a danger is not a condition precedent to a finding of negligence, constructive notice will suffice. Sano v. Pennsylvania R. Co., 3 Cir., 282 F.2d 936 (1960).

The Supreme Court has stated that the deprivation of a jury trial to the injured employee in a close or difficult case, "is to take away a goodly portion of the relief which Congress has afforded." Bailey v. Central Vermont Ry. Co., supra.

■ The Act does not make a railroad an insurer for the safety of its employees. Stone v. New York, C. & St. L. Ry. Co., 344 U.S. 407, 73 S.Ct. 358, 97 L.Ed. 441 (1953).

■ Foreseeability is an element of negligence.

"Negligence already has been defined as conduct which falls below a standard established by the law for the protection of others against unreasonable risk of harm. The idea of risk necessarily involves a recognizable danger, based upon some reasonable belief that harm may follow. A risk is a danger which is apparent, or should be apparent, to one in the position of the actor. The culpability of the actor's conduct must be judged in the light of the possibilities apparent to him at the time, and not by looking backward 'with the wisdom born of the event'. The standard must be one of conduct, rather than of consequences. It is not enough that everyone can see now that the risk was great, if it was not apparent when the conduct occurred. The Court must put itself in the actor's place." (Law of Torts, 2nd Edition, William L. Prosser, pp. 120, 121.)

On the question of foreseeability, the Court in Seaboard Container Corp. v. Rothschild, 359 Pa. 51, 58 A.2d 800, 803, used this pertinent language:

"But the ordinary individual whose conduct is being adjudged as to its alleged want of care under certain circumstances is not compelled in order to avoid the imputation of negligence to show that even a specialist in foreseeability could not have foreseen the likelihood of the happening which actually took place."

The Court then quoted Justice Holmes when he spoke for the Supreme Court of Massachusetts in the case of Com. v. Pierce, 138 Mass. 165, 52 Am.Rep. 264:

"Knowledge of the dangerous character of a thing is only the equivalent of foresight on the way in which it will act. We admit that, if the thing is generally supposed to be universally harmless, and only a specialist would foresee that in a given case it would do damage, a person who did not foresee it and who had no warning would not be held liable for the harm."

In Ellis v. Louisville & Nashville R. Co., (Ky.1952) 251 S.W.2d 577, plaintiff worked partly inside, but mostly outside, and was exposed to sanddust. He developed silicosis and charged that the railroad was negligent in not furnishing him a mask. It was not shown that other railroads furnished masks for such work. The trial court directed a verdict for the defendant and was sustained on appeal. The appellate court said:

"The general rule as to common experience, usage and custom is well-stated in 38 Am.Jur. 'Negligence' § 34, pages 679, 682, from which we take these excerpts:

" 'The common practices of the people, however, cannot be ignored in determining whether due care was exercised by an individual in a particular situation. It is not to be expected that the law will exact a degree of care in guarding any article which will make the great majority of the possessors of that article chargeable with habitual or continuous negligence. * * * Persons who are charged with a duty in relation to a particular matter or thing have a right to rely upon the sufficiency of a structure or contrivance which is in common use for the purpose and has been in fact safely used under such a variety of conditions as to demonstrate its fitness for the purpose. * * * Ordinarily, one is not considered negligent in respect of acts which conform to a common practice that has existed for years without resulting in an injury, and that has nothing about it which shows a want of due care. * * * In other words, the test of negligence with

respect to instrumentalities, methods, etc., is the ordinary usage and custom of mankind.' "

In the case of Graham v. Co-operative Wholesale Society, Ltd., (Queen's Bench Division, 1957) reported in The Weekly Law Reports, Vol. 1, 1957, in discussing fault by omission, at page 511 et seq., this pertinent language is to be found:

"Where the negligence of the employer consists of what I call a fault of omission, I think it is absolutely necessary that the proof of that fault of omission should be one of two kinds, either to show that the thing which he did not do was a thing which was commonly done by other persons in like circumstances, or to show that it was a thing which was so obviously wanted that it would be folly in anyone to neglect to provide it."

In Hawkins v. Clinchfield R. Co., 37 Tenn.App. 529, 266 S.W.2d 840, a brakeman stepped off an engine onto a nail which injured his foot. The employees sued the railroad company under the Federal Employers' Liability Act. The trial court dismissed the action and was affirmed on appeal. In affirming the decision of the trial court, the appellate court used the following language:

"While a Railroad is required under the Act to exercise ordinary or reasonable care for the safety of its employees, it is not required to anticipate and guard against unexpected and improbable dangers of which it has no knowledge. In American Jurisprudence, it says:

" 'The Federal Employers' Liability Act does not impose liability upon an employer to create a right in favor of an employee merely by reason of the fact an employee suffers an injury in the course of performance of the duties of his employment. The mere happening of an accident in the course of employment will not warrant a recovery; under this Act, as at common law, the basis of liability is negligence on the part of the employer railroad companies. 'Negligence', it is said, must have been the cause of the employee's injury, and in the absence of negligence on the part of the employer, or of fellow employees for whose acts the employer is responsible, a recovery cannot be had. Conduct which is described by the term 'negligence' may not be inferred from the fact that the employee has been injured. Nor will effect be given under the Act to a state statute which purports to create a presumption of negligence. Negligence is a test not of the applicability of the act, but of the employer's duty or obligation to respond pecuniarily for the injury.' Vol. 35, § 400, pp. 822, 823."

The record fails to show: (a) that any sound test similar to the one suggested by plaintiff has been made in the railroad industry, (b) that ear plugs have been furnished to or worn by any employee of a railroad, (c) that any defect existed in the defendant's diesel engines or other equipment, (d) that plaintiff or any of the seventy-five employees who worked in the West Knoxville and City Yards where plaintiff worked ever complained of noise or advised the defendant of any hearing difficulty. True, plaintiff says that one of the seventy-five employees who worked around engines had hearing difficulties, but this was unknown to the defendant. There is nothing in the record to indicate in other industries where ear plugs are worn whether there was need for acute hearing on any of those jobs which is required by a railroad switchman.

None of the 16,000 or more employees of the defendant have claimed that the noise made by engines in yards impaired their hearing. Defendant has not heard of such a claim being made in the entire railroad industry, and those who testified on the subject were in a position to know. The defendant has not heard of any railroad making a sound test such as that suggested by plaintiff and his witnesses. Neither plaintiff nor any of his

witnesses stated that they knew of any such sound tests having been made by any other railroad. Defendant has not heard of any ear plugs, as suggested by plaintiff, being worn by employees of the railroad.

The safety of train operators to themselves and their fellow employees depends upon their ability to hear all sounds. The proposed ear plugs, according to Dr. McConnell, would reduce the high tone noises 30 to 40 decibels (decibel is the unit of measurement of sound) and reduce the low tone noises 10 to 15 decibels. This type of testimony supports the conclusion of the witness Hadley that it would be dangerous for switchmen to wear ear plugs.

The engines used by defendant are identical to those used throughout the railroad industry. They are generally manufactured by two manufacturers.

This Court has not overlooked the rule that requires it to view the evidence in the light most favorable to the plaintiff and if there is any evidence from which reasonable minds could conclude that defendant was guilty of negligence that caused, either in whole or in part, plaintiff's loss of hearing, defendant's motion should be overruled.

Plaintiff's counsel asserts that since the jury found in favor of the plaintiff it has already concluded that there was evidence of negligence upon the part of the defendant and that such finding should have a persuasive effect upon the Court. One answer to this argument is, that if there is no evidence in the record of negligence upon the part of the defendant, the verdict of the jury would not supply evidence. If the law were otherwise, a court would never be justified in rendering a judgment in favor of the defendant notwithstanding the verdict of the jury.

We return to the proposition that defendant was only required to exercise ordinary care to provide plaintiff a safe place to work. The places furnished by the defendant to plaintiff were in the City Yards and West Knoxville Yards. Plaintiff worked outside of buildings in open spaces. He worked under conditions similar to those of all switchmen in the railroad industry. He worked near engines and other equipment similar to that used in the entire railroad industry. He did not know that the noise from the diesels was affecting his hearing until examined by Dr. Knight in 1960. Nor did the defendant. There was nothing to put defendant on notice that the noise was affecting plaintiff's hearing or any of his fellow employees. The fact that an audiologist suggested a conservation sound program during his testimony does not make defendant negligent for failure to have such program in existence at the time of plaintiff's injury.

Defendant is not to be judged by the standards that a sound expert would promulgate, subsequent to the injury, but by customary standards recognized by the industry at the time of plaintiff's injury. Ordinarily, one is not guilty of acts of negligence which conform to the common practice. A prime test of negligence is the ordinary usage of mankind.

Measured by these standards, this Court concludes that there is no evidence in the record showing negligence upon the part of the defendant. In reaching this conclusion, the Court has not overlooked the trend of the law to narrow the authority of the trial judge to direct a verdict. See Gugel, Sr. v. Sears, Roebuck & Company, 6th Cir., 308 F.2d 131.

Let an order be presented in conformity with the views herein expressed.